IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| | ) | |
| v. | ) | 1:22-CR-00025-JPB-RDC |
| | ) | |
| DENISE THOMAS | ) | |

**MOTION TO DISMISS INDICTMENT
DUE TO SELECTIVE PROSECUTION**

COMES NOW, Denise Thomas, by and through undersigned counsel, and files this Motion to Dismiss Indictment Due to Selective Prosecution. In support of this motion the Court is shown as follows:

**FACTS**

In this prosecution, the government has charged Ms. Thomas with crimes stemming from applications for funds made available through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, including a loan under the Payroll Protection Program ("PPP").

As of the time of this filing, counsel is aware of 78 defendants charged in the Northern District of Georgia with submitting fraudulent applications

for EIDL funds and PPP loans. At this time and upon information and belief, counsel tentatively believe at least 65 of those defendants to be African-American (including Ms. Thomas), that 71 are people of color, and that 6 are white. The percentages are as follows: 8.5% of defendants are white, 91% of defendants are people of color, and 83.3% of the people of color population are African American. Undersigned counsel is currently representing two other clients who are being charged with crimes related to the CARES Act and PPP loans, both of those clients also happen to be African American women.

Counsel is aware of at least one white person who was part of an investigation in the Northern District of Georgia, but who was not prosecuted. An individual, C.C., was investigated as part of the case against Maurice Fayne, 1:20-cr-228-MHC-JKL. C.C. prepared false forms to be submitted in support of the PPP application, and she corresponded with the bank to get funds from the loan released. Further, C.C. has a criminal history that includes fraud crimes. Ms. Thomas has no such prior fraud convictions. Yet, the government did not charge C.C.

## ARGUMENT AND CITATIONS OF AUTHORITY

Plainly, the government cannot and does not prosecute every individual who has violated the law. *United States v. Smith*, 231 F.3d 800, 801 (11th Cir. 2000). The government has broad discretion to determine who to charge with a crime, and a "strong presumption of regularity supports those decisions." *Id.* However, the government remains bound by the U.S. Constitution, and the Fifth Amendment's Due Process Clause prohibits the government from "denying to any person the equal protection of the laws." *United States v. Windsor*, 570 U.S. 744, 774 (2013); *see also Smith*, 231 F.3d at 801. Therefore, the decision whether to prosecute an individual "may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

Ms. Thomas understands that she faces a "demanding" burden to establish that her prosecution violates her right to the equal protection guaranteed by the Constitution. *Smith*, 231 F.3d at 801. To meet this burden, she must present by clear evidence that the prosecution (1) had a discriminatory effect, and (2) was motivated by a discriminatory purpose. *Id.* at 808. The Eleventh Circuit has noted that these two prongs "will often overlap to some extent." *Id.* at 810.

The Court should consider numerous legitimate factors that could have motivated the prosecutorial decisions, including (1) the strength of the case; (2) the prosecution's general deterrence value; (3) the government's enforcement priorities; and (4) the case's relationship to the government's overall enforcement plan. *Id.* at 810. For cases of racial discrimination, the defendant must prove that similarly situated individuals of a different race were not prosecuted. *Id.* at 808.

Ms. Thomas alleges that the government has discriminated against her based on her race and class. In the Northern District of Georgia, the publicly available information indicates that the government has almost exclusively charged minorities—and specifically, African Americans—with committing fraud in relation to the CARES Act programs. In the initial days of the pandemic and the PPP program, businesses who took the loans without qualifying were often allowed to return the funds without criminal charges.[1] In other districts, it appears that the government has allowed wealthier, white men and/or corporations to resolve allegations of fraud via civil

---

[1] Popken, Ben, Which companies are returning their PPP loans? Here's the list., NBC News, April 28, 2020, available at https://www.nbcnews.com/business/business-news/which-companies-are-returning-their-ppp-loan-here-s-list-n1194566 (last accessed August 12, 2022).

4

settlements without criminal prosecutions.[2] Given the percentages established above and the fact that the Department of Justice has allowed other similarly situated defendants to resolve the issues without criminal charges, Ms. Thomas submits that the indictment should be dismissed for selective prosecution.

The Center for Public Integrity has noted that the SBA loan data reveals little about how much of the federal loans nationwide went to minority-owned businesses. It notes that about 86% of the 661,218 loans made for $150,000 or more don't provide any information about race or ethnicity of the business owner. The remaining 14% of loans show that more than 83% were to organizations identified as white-owned businesses, according to an analysis by the Center for Public Integrity. Black-owned businesses received less than 2% of the loans, and 6.6% of the loans went to Hispanic-owned businesses, according to the Public Integrity

---

[2] U.S. Dep't of Justice, Eastern District of California Obtains Nation's First Civil Settlement for Fraud on Cares Act Paycheck Protection Program, Jan. 12, 2021, available at https://www.justice.gov/usao-edca/pr/eastern-district-california-obtains-nation-s-first-civil-settlement-fraud-cares-act (last accessed August 12, 2022); U.S. Dep't of Justice, Owner of Jet Charter Company Settles False Claims Act Allegations Regarding Misappropriation of Paycheck Program Loan, Aug. 26, 2021, available at https://www.justice.gov/opa/pr/owner-jet-charter-company-settles-false-claims-act-allegations-regarding-misappropriation (last accessed August 12, 2022).

5

analysis.³ A recent study suggested that as much as 15% of these loans could be fraudulent.⁴ Based on this data alone, it is clear that the number of African Americans charged with related fraud in this district is out of proportion with the number of African Americans and African American owned businesses that received the CARES Act funds.

Other individuals in similar situations to Ms. Thomas have been allowed to either return the funds in question or to enter into civil settlements without facing criminal charges. Specifically, the government gave large companies – who were called out by a public outcry over news of their CARES Act loans – a "safe harbor" deadline within which to return the funds without penalty if they "misinterpreted" the rules of the loan application.⁵ This was true despite then-Treasury Secretary Mnuchin's April 2020 admonishment that firms that improperly took these loans could be

---

³ Small Business Loan Data Includes Little About Race. July 6, 2020. https://publicintegrity.org/health/coronavirus-and-inequality/small-business-loan-data-includes-little-on-owners-race-paycheck-protection-program/

⁴ Did FinTech Lenders Facilitate PPP Fraud? John M. Griffin, Samuel Kruger, and Prateek Mahajan. August 17, 2021. https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3906395

⁵ Sarah Kolinovsky, Lawsuit seeks data on PPP small business loans as large companies face deadline to return funds, ABC News, May 14, 2020, available at https://abcnews.go.com/Business/lawsuit-seeks-data-ppp-small-business-loans-large/story?id=70667339 (last accessed August 12, 2022).

subject to "criminal liability."[6]  All told, nearly $436 million dollars was returned in lieu of penalties.[7]  Likewise, the government has entered into settlements with other companies in lieu of prosecution.[8]  But in this case, the government has never offered to allow Ms. Thomas to simply repay the funds or to enter into a civil settlement. Combined with C.C., these incidents are sufficient to meet Ms. Thomas' burden to establish similarly situated individuals who have not been subject to prosecution.

Regarding the discriminatory purpose requirement, the Eleventh Circuit has explained:

> In deciding if a defendant has established selective prosecution, a court must undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.". . . "Circumstantial evidence of invidious intent may include proof of disproportionate impact." . . . Indeed, under some circumstances proof of discriminatory impact "may for all practical purposes demonstrate unconstitutionality because in

---

[6] Erica Werner, Oversight efforts stumble as White House continues changing rules on emergency spending measures, The Washington Post, April 28, 2020, available at https://www.washingtonpost.com/us-policy/2020/04/28/mnuchin-coronavirus-small-business-ppp/ (last accessed August 12, 2022).

[7] Ben Popken, Which companies are returning their PPP loans?  Here's the List., NBCNews, April 28, 2020, available at https://www.nbcnews.com/business/business-news/which-companies-are-returning-their-ppp-loan-here-s-list-n1194566 (last accessed August 12, 2022).

[8] Press Release, Eastern District of California Obtains Nation's First Civil Settlement for Fraud on Cares Act Paycheck Protection Program, Jan. 12, 2021, available at https://www.justice.gov/usao-edca/pr/eastern-district-california-obtains-nation-s-first-civil-settlement-fraud-cares-act (last accessed August 12, 2022).

various circumstances the discrimination is very difficult to explain on nonracial grounds."

*United States v. Gordon*, 817 F.2d 1538, 1541 (11th Cir. 1987) (citation omitted), vacated in part on reh'g, 836 F.2d 1312 (11th Cir. 1988).

In *Gordon*, the court held that the district court erred in denying an evidentiary hearing on the defendant's selective-prosecution claim. The defendant claimed that the government prosecuted black political leaders in Alabama's majority-black counties for voting fraud, but did not prosecute county residents who were members of a rival white-dominated political party who were committing similar offenses. 817 F.2d at 1539-41.

Here, as in *Gordon*, the discriminatory impact provides a sufficient basis to support the claim of discriminatory intent. Ms. Thomas has offered proof that other individuals and companies were permitted to repay their loans in lieu of criminal prosecution. These individuals are similarly situated to Ms. Thomas in this case. This is not a case where Ms. Thomas is being prosecuted based, in part, on multiple prior crimes; rather, the criteria for prosecution is obtaining CARES Act funds when the individual or company was not entitled to do so. Multiple companies and individuals who also obtained funds when they were not entitled to do so under the program

8

rules were not prosecuted.[9] When 71 out of 78 people prosecuted are people of color, the discriminatory impact is high enough to show discriminatory intent.

## REQUEST FOR DISCOVERY

In *United States v. Armstrong*, 517 U.S. 456, 468-69 (1996), the Supreme Court outlined the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled her out for prosecution on the basis of her race.  Ultimately, the Court held that a defendant with a selective prosecution claim must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose." *Id. at 465*. To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted. *Id.*

Here, as discussed above, Ms. Thomas has met this standard. Therefore, discovery is appropriate.  Accordingly, Ms. Thomas requests that the Court order the government to provide the following information:

- A list of every defendant prosecuted for fraud related to the CARES Act Programs, including EIDL and PPP fraud, and the defendant's race and gender;

---

[9] *See supra* n.6.

- A list of every individual and/or entity investigated by the Northern District of Georgia for fraud related to the EIDL and/or PPP programs, and the race and gender for those individuals (and in the case of an entity, the race and gender of the person responsible for that entity, such as the CEO or director);
- A list of individuals and/or entities who entered into a civil judgment and/or were allowed to repay the loans/advances without facing criminal charges.

## CONCLUSION

WHEREFORE, Ms. Thomas requests that the Court order that the government provide relevant discovery, hold an evidentiary hearing on this Motion, grant this Motion, dismiss the indictment, and order any other relief deemed just.

Respectfully submitted this 12th day of August, 2022,

/s/ *Byron L. Conway Jr.*
Byron L. Conway Jr.
Ga. Bar No. 487767
Attorney for Denise Thomas

BYRON L. CONWAY JR.
FEDERAL DEFENDER PROGRAM, INC.
101 MARIETTA STREET NW
SUITE 1500
ATLANTA, GA 30303
(404) 688-7530
BYRON_CONWAY@FD.ORG