IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*v.*<br><br>DENISE THOMAS | Criminal Action No.<br><br>1:22-CR-0025-JPB-RDC |

**Government's Response in Opposition to Motion to Dismiss Indictment**

The United States of America, by Ryan K. Buchanan, United States Attorney, and Bernita Malloy, Assistant United States Attorney for the Northern District of Georgia, files this response in opposition to Defendant Denise Thomas's motion to dismiss the indictment.

In her motion, Thomas argues that the indictment should be dismissed because, she alleges, "the government has discriminated against her based on her race and class."[1] Mot. at 4 (Doc. 24). Because the government did not discriminate against Thomas based on her race or socioeconomic class, and because she falls far short of meeting her burden to show otherwise, her motion to dismiss the indictment should be denied.

Indeed, Thomas's motion rehashes claims made by defendants in two similar Paycheck Protection Program ("PPP") fraud cases in this district that two district

---

[1] Although Thomas claims discrimination upon the basis of class, her motion provides no detail or support for this claim except to assert that the government settled two civil cases involving "wealthier" individuals.

judges recently rejected. *See United States v. Wakefield and Middleton* (hereinafter "*Wakefield*"), No. 3:21-cr-00006-TCB-RGV, Docs. 228, 249, 267, 294, 313; *United States v. Crosby* (hereinafter, "*Crosby*"), No. 1:21-cr-011-LLM-CCB, Docs. 129, 138, and 143. In both *Wakefield* and *Crosby*, the district court found that the defendants – who, like here, were charged with wire fraud conspiracy and related charges for submitting fraudulent PPP or EIDL[2] loan applications – failed to prove any improper selective prosecution. *See Crosby*, Doc. 150 at 8-9, attached hereto as **Exhibit 1**; *Wakefield Report and Recommendation*, Doc. 324 at 13, attached hereto as **Exhibit 2** (report and recommendation adopted by *Wakefield*, Doc. 335, attached hereto as **Exhibit 3**.) In both cases, the court also concluded that the defendants were not entitled to any discovery on their selective prosecution claims.[3] Exhibit 1-2; *see also Wakefield*, Doc. 278, attached hereto as **Exhibit 4** (denying motion to compel discovery). Thomas's motion relies on essentially the same purported evidence and suffers from the same defects as the *Crosby* and *Wakefield* motions. It should be denied due to insufficient evidence like theirs.

---

[2] Economic Injury Disaster Loans

[3] In *Crosby*, United States District Judge Leigh Martin May denied the defendant's request for discovery. (Ex. 1 at 8.) In *Wakefield*, United States Magistrate Judge Russell G. Vineyard denied defendants' motion to compel discovery and supplemental motion to compel discovery on their selective prosecution claim. (Ex. 2 at 13; Ex. 4 at 13.) The *Wakefield* defendants' motions to compel were not presented to the District Judge.

## Background

On January 25, 2022, a grand jury in the Northern District of Georgia returned a two-count indictment charging defendant Denise Thomas with wire fraud (Counts 1-2) in connection with Thomas's submission of a fraudulent Paycheck Protection Program (PPP) loan application for her company, Pink Smoke Shooters Range & Gun Club Limited Co. ("Pink Smoke") (Doc. 1.)

The indictment alleges that Thomas knowingly submitted fraudulent information and documentation to obtain a PPP loan. Emergency PPP funds were intended, among other things, to enable qualifying small businesses to maintain their operations and employee payroll through the COVID-19 crisis. As part of the scheme, Thomas submitted a PPP loan application for Pink Smoke which reported that the company had an annual payroll of over $9 million and sixty-one (61) employees. The PPP loan application attached allegedly falsified payroll tax forms and other falsified payroll documentation. As a result of the fraudulent PPP loan application, on March 16, 2021, Amur Equipment Finance, Inc. ("Amur") distributed approximately $1,214,090.00 in PPP loan funds to Pink Smoke. Thomas then transferred the proceeds into five different accounts and spent almost $61,000 of the loan funds on personal expenses.

**Argument**

1. **The standard for a defendant to succeed in a selective prosecution claim is exacting.**

Well-settled law regarding claims of selective prosecution sets out rigorous standards for the defendant. "Federal prosecutors have 'broad discretion' in enforcing criminal laws and a 'presumption of regularity' attaches to their prosecutorial decisions." *United States v. Cannon*, 987 F.3d 924, 936-37 (11th Cir. 2021) (citing *United States v. Armstrong*, 517 U.S. 456 (1996)). "Federal prosecutors have such latitude because they fall within a 'special province' of the executive branch and must assist in ensuring the faithful execution of the nation's laws." *Id.* at 937. That discretion is not boundless, however, and "is subject to 'constitutional constraints'" including a constraint "imposed by the equal protection component of the Due Process Clause of the Fifth Amendment … that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.* (quotation omitted).

To succeed in a claim for selective prosecution, a defendant "must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (citation omitted). "To establish a discriminatory effect in a race case, the claimant must show that similarly situated individuals of a different race were not prosecuted." *Id.* The Eleventh Circuit has described the "similarly situated" component of the discriminatory effect prong as one who

committed the same basic crime in the same manner, and against whom the evidence is at least as strong:

> [A] "similarly situated" person for selective prosecution purposes is one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

*United States v. Brantley*, 803 F.3d 1265, 1271-72 (11th Cir. 2015) (alteration adopted) (quoting *United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000)).

If a discriminatory effect is proven, the defendant must then prove a discriminatory purpose. To do so, the defendant must prove that the government "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011) (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

Because courts presume the regularity of a prosecution decision, "a defendant who seeks to establish a claim of selective prosecution in violation of the Constitution carries a 'demanding' burden." *Id.* (citing *Smith*, 231 F.3d at 807). "[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present *clear evidence* to the contrary." *Smith*, 231 F.3d at 807 (quoting *Armstrong*) (emphasis added).

**2. Thomas has no evidence to show a discriminatory effect.**

To prevail on the first prong of the selective prosecution analysis, Thomas must show that a similar fraud has been identified, but not prosecuted. "'[I]n order to prevail on [her] selective prosecution claim [the defendant] must establish that the government could prove beyond a reasonable doubt that someone else had engaged in the same type of conduct, committing the same crime in that or substantially the same manner." *Smith*, 231 F.3d at 811. But Thomas's motion fails to identify a single similarly situated individual who could have been charged by the government but who was not.

Thomas raises the purported differential treatment of three groups in support of her claim of a discriminatory effect: (1) businesses that voluntarily returned government funds in an amnesty program; (2) an individual identified as C.C., and (3) program-wide statistics about PPP loans. The *Crosby* and *Wakefield* defendants relied on these same groups in their motions, and the district court found that none of them supported a showing of a discriminatory effect. For the reasons set forth below, the court should likewise reject the arguments here.[4]

---

[4] In addition to the sources relied upon by the *Wakefield* and *Crosby* defendants, Thomas cites certain news articles relating to the voluntary return of PPP loans and PPP loan data. *See, e.g.,* Mot. at n. 5 and 6. These news reports, which discuss larger businesses' eligibility for CARES Act funds, add nothing of substance to Thomas's claims.

### A. Businesses that returned government funds in an amnesty program or entered civil settlements are not similarly situated to Thomas.

Thomas is charged with wire fraud in support of her PPP loan application. Lacking the required evidence of similarly situated individuals, Thomas instead argues that news articles about businesses that voluntarily returned PPP funds for which they did not qualify and press releases about settlements in two out-of-district civil cases brought under the False Claims Act support her claim of a discriminatory effect.[5] (Mot. at 4-5, n. 1 and 2.)

As District Judge Leigh Martin May correctly held, "[t]he problem with these examples is that the defendants are not similarly situated." *See Crosby*, Ex. 1 at 6 (rejecting selective prosecution claim that relied on the same sources cited in footnotes 1 and 2 of the Motion). The criminal case against Thomas for submitting a fraudulent PPP application alleges intentional wire fraud, so is materially different than instances in which companies "misinterpreted" eligibility rules for obtaining CARES Act funds. *See* Ex. 2 at 8; Ex. 4 at 10-11.

---

[5] Whether these citations amount to "evidence" need not be determined here. Even if they were evidence, they fall short of the showing necessary. Moreover, statistics concerning PPP prosecutions in this district and the existence of civil cases in other districts, even if somehow otherwise relevant, does not identify similarly situated individuals, subject to potential prosecution in this district, who were not charged.

### B. *C.C. is not similarly situated to Thomas.*

Like the defendants in *Wakefield* and *Crosby*, Thomas also claims that C.C. was similarly situated to her but not prosecuted. (Mot. at 2-8.) C.C. is not similarly situated to Thomas.

The facts related to the investigation involving C.C. (Case No. 1:20-CR-00228) include the following:[6]

- Four individuals were indicted in the case: one Black person and three white people.[7] The Black person and one of the white people were charged with PPP fraud.
- C.C. was not the business owner.
- C.C. did not receive any fraudulent proceeds.
- C.C. did not use the fraudulent proceeds or attempt to launder them.
- Upon hearing that the lead defendant had been charged, C.C. contacted the FBI.
- C.C. cooperated with the investigation.

These facts demonstrate that Thomas and C.C. are not similarly situated. None of the foregoing facts about C.C. are true of Thomas. Thomas submitted a fraudulent PPP loan application falsely claiming that her company, Pink Smoke, had an annual payroll of over $9 million. She supported this figure with fraudulent tax forms that had never been filed with the IRS and false payroll

---

[6] These facts pertaining to C.C. were highlighted by Judge May in *Crosby*. (Ex. 1 at 7.)

[7] One of the three has been dismissed because he died.

documentation. Because the fraudulent PPP loan application was submitted for Thomas's company, the fraud could not have occurred without her involvement.

Just as the district court found in *Wakefield* and *Crosby*, C.C. is not similarly situated to Thomas and does not support Thomas's claim of a discriminatory effect.

### C. *Thomas's program-level statistics are not specific enough to meet the standard for similarly situated defendants.*

As a general matter, raw statistics are insufficient to meet a defendant's burden show that a similar fraud has been identified, but not prosecuted. That is because "raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants." *Jordan,* 635 F.3d at 1188 (quotation and citation omitted).

Thomas's attempt to rely on general statistics about EIDL and PPP fraud prosecutions and SBA loan data is inadequate for that reason. Thomas first claims that 83.3% of EIDL and PPP prosecutions in this district are against African American individuals.[8] (Mot. at 2.) She then claims that the prosecutions in this district are out of proportion with national statistics on CARES Act fund recipients. (Mot. at 6.) But Thomas admits that the national statistics only

---

[8] Thomas does not provide the source of these numbers. However, it appears these statistics have been updated since similar claims were alleged in *Wakefield* and *Crosby*. (*Wakefield*, Doc. 249, at 2; *Crosby*, Doc. 129 at 2-3.) The government has not attempted to review the underlying data to determine whether the statistics cited by Thomas are accurate. Nonetheless, this does not alter the problem with relying on high-level statistics.

capture the race or ethnicity of the business owner for 14% of the loans. (Mot. at 5.) And Thomas's claim that as much as 15% of PPP loans overall "could be fraudulent," is based on a study of potential fraud in PPP loan applications that did not examine the applicants' races or ethnicities. (*See* Mot. at 6, n. 4). Nor did the study identify actual instances of fraud by PPP recipients or provide relevant, individualized information about recipients whose applications were deemed suspicious, such as their criminal histories or the strength of any evidence against them.

Even if the underlying data could identify rates of PPP fraud by different racial and ethnic groups, comparing national data, on the one hand, with district specific data, on the other, does not demonstrate a statistical discrepancy at either the national or the district level.

Indeed, the *Wakefield* defendants attempted to rely on the same data, but it was deemed insufficient by Judge Vineyard. *See* Ex. 4 at 8; *see also* Ex. 1 at 5-6 (finding that data on the number of Black defendants prosecuted in this district for fraud involving the CARES Act was not probative of the similarly situated inquiry of the discriminatory effect test).

In sum, Thomas fails to establish a discriminatory effect because she has not identified any similarly situated individuals who were not prosecuted, let alone a pattern of such discrimination.

### 3. Thomas cannot meet her burden to show a discriminatory purpose.

Thomas's motion provides even less with respect to the second prong, that the government chose to prosecute her at least in part 'because of,' not merely 'in

spite of' her race. Thomas relies on *United States v. Gordon*, 817 F.2d 1538, 1541 (11th Cir. 1987) in claiming that the alleged discriminatory impact provides a sufficient basis to support the claim of discriminatory intent. (Mot. at 8.) But the evidence in *Gordon* of a discriminatory impact also related to the discriminatory intent. In particular, in *Gordon*, the defendant provided affidavits and other evidence in support of his claim, including a statement from the DOJ that the "investigations were part of a new policy brought on by the arrogance on the part of blacks in these counties." *Id*. at 1540 (internal quotation marks omitted). The Eleventh Circuit noted that even such a statement would not be enough on its own without the other evidence the defendant offered, which included evidence that a rival white political organization assisted law enforcement officials in prosecuting his case. *Id*. Just as the court in *Wakefield* and *Crosby* found, no similar evidence exists here. *See* Ex. 4 at 12, n.3 (citing *United States v. Khan,* No. 1:17-CR-40-SCJ-CMS, 2017 WL 9605112, at *3 (N.D. Ga. Sept. 5, 2017), adopted by 2018 WL 2213978, at *3 (N.D. Ga. May 15, 2018)); Ex.1 at 9, n.1. As discussed above, Thomas offers only general statistics for her claim that the second prong is met, that is, that the government had a discriminatory purpose in charging her. As such, the Court should find that Thomas failed to meet her burden with respect to both prongs and deny her motion.

4. **Thomas is not entitled to discovery or an evidentiary hearing.**

In the alternative to arguing for dismissal due to selective prosecution, Thomas asks the Court to order discovery from the government in the hopes that such discovery would somehow uncover evidence to support her allegations.

Mot. at 9-10. A similar, high standard applies for defendants seeking discovery to support their claims. The Supreme Court held that "[t]he justifications for a rigorous standard for the elements of a selective prosecution claim … require a correspondingly rigorous standard for discovery in aid of such a claim." *Armstrong*, 517 U.S. at 468. To obtain discovery from the government to support a selective prosecution claim, "a defendant must provide some evidence tending to show the existence of the essential elements of the defense." *Id.* at 469 (quotations and citations omitted).

As a threshold matter, Thomas's requests go far beyond the limits of Federal Rule of Criminal Procedure 16, are extremely burdensome, and some of them may violate Federal Rule of Criminal Procedure 6 regarding the rules of grand jury secrecy and the law enforcement investigatory privilege.  In any event, Thomas has not offered any supportable evidence whatsoever, let alone met the rigorous standard established in *Armstrong*.

The Eleventh Circuit "affirmed the denial of discovery and an evidentiary hearing on a selective prosecution claim where the defendant's statistics showed that 'approximately 93% of Armed Career Criminal Act ('ACCA') prosecutions in the Northern District of Georgia were against African Americans, but failed to 'include the criminal histories of the other defendants.'" *Cannon*, 987 F.3d at 938 (quoting *Jordon*, 635 F.3d at 1189). It explained that "because the statistics did not touch on the criminal histories of other defendants who were not prosecuted, they were not probative of the 'similarly situated' inquiry of the discriminatory effect test." *Id.* (citation and internal marks omitted). Because "[the defendant]

did not show that a single arrestee who was not prosecuted under the ACCA qualified for such prosecution, much less possessed a criminal history as substantial as his own," he failed to present "'some' evidence tending to establish selective prosecution, much less facts sufficient to create a reasonable doubt about the constitutionality of his prosecution." *Jordan*, 635 F.3d at 1189 (internal marks omitted). Accordingly, the Eleventh Circuit affirmed the district court's ruling that the defendant was not entitled to discovery on his selective prosecution claim even where the statistics apparently showed a disparity. *Id.*

Of note, Thomas's discovery requests are identical to the requests rejected by the court in *Wakefield*. *See* Ex. 4 at 3-5; *see also* Ex. 2 at 13.

In *Wakefield* and *Crosby*, the court relied upon *Jordan* and *Cannon* in concluding that the defendants had not provided sufficient evidence to entitle them to discovery. (Ex. 4, *Wakefield*, Doc. 278 at 5-9; Ex. 1, *Crosby*, Doc. 150 at 4-6.) The same is true here. Although Thomas cites some statistics (of the same type relied upon in *Wakefield* and *Crosby*), she fails to provide evidence of any similarly situated individuals who have not been charged. Absent such evidence, she fails to meet the standards required for the Court to order discovery.

By failing to provide any evidence to support either prong of the analysis, Thomas fails to meet the rigorous standard required to obtain discovery. *Jordan*, 635 F.3d at 1188; *see also United States v. Purdy*, No. 2:16-cr-00005-RWS-JCF, 2016 WL 7007542, at *2-5 (N.D. Ga. Oct. 25, 2016), adopted by 2016 WL 6956759 (N.D. Ga. Nov. 28, 2016) (defendant has "not met the rigorous standard for discovery because he has not presented 'some evidence tending to show the existence of'

both elements of his claim, i.e., discriminatory effect and discriminatory purpose") (emphasis omitted); *United States v. Hill*, No. 1:16-cr-051-TWT-JSA, 2016 WL 6246887, at *2 (N.D. Ga. Sept. 16, 2016), adopted by WL 6217122 (N.D. Ga. Oct. 25, 2016) (denying discovery for failing "to produce even 'even some evidence' of selective prosecution"); *United States v. Khan*, No. 1:17-cr-40-SCJ-CMS, 2017 WL 9605112, a t *3 (N.D. Ga. Sept. 5, 2017), adopted by 2018 WL 2213978 (N.D. Ga. May 15, 2018) (defendant failed to make the "threshold showing that *Armstrong* requires in order to compel the requested discovery"). Therefore, the Court should deny her request for discovery from the government.

 Thomas also requests an evidentiary hearing on her motion. Mot. at 10. But, like discovery, she is not entitled to a hearing absent "present[ing] 'some' evidence tending to establish selective prosecution." *Jordan*, 635 F.3d at 1189. In *Jordan*, the Eleventh Circuit applied the same standard to a request for an evidentiary hearing as it did to a request for discovery. *Id. See also Crosby*, Doc. 150 at 8. Because Thomas fails to meet the standard necessary to obtain discovery, she likewise fails to meet the standard necessary for the Court to order an evidentiary hearing.

## Conclusion

For the foregoing reasons, the Court should deny defendant Denise Thomas's Motion to Dismiss Due to Selective Prosecution and deny her requests for discovery and for an evidentiary hearing.

Respectfully submitted,

RYAN K. BUCHANAN
*United States Attorney*

/s/BERNITA MALLOY
*Assistant United States Attorney*
Georgia Bar No. 718905
Bernita.malloy@usdoj.gov

600 U.S. Courthouse, 75 Ted Turner Drive S.W., Atlanta, GA 30303
(404) 581-6000  fax (404) 581-6181

**Certificate of Service**

The United States Attorney's Office served this document today by filing it using the Court's CM/ECF system, which automatically notifies the parties and counsel of record.

Byron L. Conway Jr.

August 17, 2022

/s/ BERNITA MALLOY

BERNITA MALLOY

*Assistant United States Attorney*