IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:21-CR-0011-LMM-CCB-3 |
| TRAVIS C. CROSBY, | : | |
| | : | |
| Defendant. | : | |

# **ORDER**

Defendant has filed a Motion to Dismiss Indictment Due to Selective Prosecution. Dkt. No. [129]. In the motion, Defendant seeks an order dismissing the indictment or, in the alternative, allowing discovery and an evidentiary hearing relating to his selective-prosecution claim. The Government opposes the motion, Dkt. No. [133], and Defendant has filed a reply, Dkt. No. [138]. The Court also heard oral argument on the motion on January 20, 2022. See Dkt. No. [145]. Following the hearing, counsel filed supplements to address an issue raised at the hearing. Dkt. Nos. [141, 143]. For the following reasons, Defendant's motion is **DENIED**.

## I.   BACKGROUND

Defendant is charged, along with five other individuals, with crimes in connection with applications for funds made available through the Payroll

Protection Program ("PPP"). Dkt. No. [125]. All other defendants in this case have pleaded guilty. Dkt. Nos. [74, 95, 97, 99, 100].

Defendant argues that the Court should dismiss the charges asserted against him because the Government has discriminated against him based on his race. Dkt. No. [129] at 5. Specifically, Defendant argues that "the government has almost exclusively charged minorities—and specifically, Black individuals—with committing fraud in relation to the CARES Act programs." Id.

In support, Defendant points to Department of Justice ("DOJ") press releases and an NBC News webpage, which he contends show that businesses and white men who took PPP funds without qualifying for them were often allowed to return the funds or resolve allegations of fraud through civil settlements without criminal prosecution. Id. He also alleges that of 59 defendants charged in the Northern District of Georgia for similar crimes, 52 are believed to be Black, including all the defendants in this case. Id. at 2. Of the remaining seven defendants, Defendant's counsel believes that five of them are not white. Id. According to Defendant, this translates to 88.5% of the prosecutions in this district against Black individuals and 96.6% of the prosecutions against people of color. Id. at 3. He further notes that 11,768,689 total PPP applications were submitted and that among the applications that identified the race of the applicants, 32.98% of the loans went to Black-owned businesses, while 67% went to white-owned businesses, suggesting that the PPP prosecutions in this district are disproportionately against Black individuals and businesses. Id. Defendant

also points to an example in another case in this district where a white person he contends is similarly situated was not charged. Dkt. No. [138] at 3-4.

Based on this information, Defendant requests that the Court dismiss the indictment, or in the alternative, allow discovery and hold an evidentiary hearing on the motion. Dkt. No. [129] at 6. Although Defendant's motion does not specifically identify the discovery requested, his reply brief indicates that he is "asking for the Government to identify the race of those investigated but not prosecuted in this district or who have been allowed to return funds, whether via civil settlement or another mechanism, in lieu of prosecution." Dkt. No. [138] at 7.

## II.   LEGAL STANDARD

Prosecutors have "broad discretion" in enforcing criminal laws, and a "presumption of regularity" attaches to their prosecutorial decisions. United States v. Armstrong, 517 U.S. 456, 464 (1996) (citations and internal quotation marks omitted). Therefore, "a defendant who seeks to establish a claim of selective prosecution in violation of the Constitution carries a 'demanding' burden." United States v. Cannon, 987 F.3d 924, 937 (11th Cir. 2021) (quoting United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000)).

" '[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary.' " Smith, 231 F.3d at 807 (emphasis and internal quotation marks omitted) (quoting Armstrong, 517 U.S. at 465). This requires a showing "that the federal

3

prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." Id. at 808 (quoting Armstrong, 517 U.S. at 465); United States v. Hill, Crim. Case No. 1:16-CR-051-TWT-JSA, 2016 WL 6246887, at *2 (N.D. Ga. Sept. 16, 2016) (R&R), adopted at 2016 WL 6217122 (N.D. Ga. Oct. 25, 2016). Obtaining discovery on a selective-prosecution claim is subject to "a correspondingly rigorous standard" and "requires a defendant to produce 'some evidence tending to show the existence of the essential elements' of a selective prosecution claim—discriminatory effect and discriminatory purpose." Cannon, 987 F.3d at 937 (internal quotation marks omitted). Likewise, a defendant is not entitled to a hearing unless he "present[s] 'some' evidence tending to establish selective prosecution.' " United States v. Jordan, 635 F.3d 1181, 1189 (11th Cir. 2011).

## III. DISCUSSION

The Government does not refute Defendant's statistics and instead argues that Defendant has not met the high burden of proof set out in Armstrong and its progeny. Dkt. No. [133]. Although the statistics and examples Defendant cites are troubling, the Court concurs. In addition, even if the Court ordered the discovery Defendant requests, the Court finds that those documents, even considered in the light most favorable to Defendant, would be insufficient for Defendant to meet his burden for dismissal.

First, Defendant's arguments about the number and percentage of Black defendants charged in the Northern District of Georgia with fraud in connection

with obtaining Cares Act funds and PPP loans are insufficient. "Statistical data reflecting the treatment of only one particular group cannot satisfy the discriminatory effect prong because it fails to show that similarly situated persons were treated differently." Cannon, 987 F.3d at 937-38. For instance, in United States v. Jordan, the Eleventh Circuit "affirmed the denial of discovery and an evidentiary hearing on a selective prosecution claim where the defendant's statistics showed that 'approximately 93%' of Armed Career Criminal Act ("ACCA") prosecutions in the Northern District of Georgia were against African-Americans, but failed to 'include the criminal histories of the other defendants.' " Cannon, 987 F.3d at 938 (quoting Jordan, 635 F.3d at 1189). In doing so, it "explained that because the statistics did not touch on the criminal histories of other defendants who were not prosecuted, they were 'not probative of the "similarly situated" inquiry of the discriminatory effect test.' " Id. (quoting Jordan, 635 F.3d at 1189). Because the defendant " 'did not show that a single arrestee who was not prosecuted under the ACCA qualified for such prosecution,' . . . [he] failed to present ' "some" evidence tending to establish selective prosecution, much less facts sufficient to create a reasonable doubt about the constitutionality of his prosecution.' " Cannon, 987 F.3d at 938 (quoting Jordan, 635 F.3d at 1189). Accordingly, the court affirmed the district court's ruling that the defendant was not entitled to an evidentiary hearing or discovery on his selective-prosecution claim. Jordan, 635 F.3d at 1189.

Here, as in Jordan, Defendant attempts to support his request for discovery by focusing on the number of Black defendants prosecuted in this district for fraud involving the CARES Act, but such "figures are not probative of the 'similarly situated' inquiry of the discriminatory effect test," and therefore, defendants have "not presented 'some' evidence tending to establish selective prosecution" as required to obtain discovery or an evidentiary hearing. Id. (citations and internal marks omitted); accord Cannon, 987 F.3d at 937-38 ("Under Armstrong and Jordan, this statistical evidence fails to establish discriminatory effect because it does not demonstrate that similarly situated defendants of other races could have been prosecuted for the same offenses but were not.").

Defendant also attempts to support his selective-prosecution argument by arguing that DOJ news releases show that in three other instances outside this district, the Government allowed similarly situated individuals to resolve their issues without criminal charges. Dkt. No. [129] at 5 & n.8; Dkt. No. [138] at 5 & n.4. The problem with these examples is that the defendants are not similarly situated. Two news releases involve the settlement of False Claim Act cases. The other involves a business that made false statements regarding its bankruptcy status. In addition, the NBC News webpage Defendant cites appears to contain a list of businesses who voluntarily repaid their PPP loans before any sort of Government investigation.

In Defendant's reply brief, he also mentions an individual, C.C., who he claims was similarly situated but not prosecuted. Dkt. No. [138] at 3-4. The Court asked for supplemental briefing from the parties on the particulars of C.C.'s case. In response, the Government indicated that C.C.'s case involved four indicted individuals, with three of those indicted being white. Dkt. No. [141] at 3. C.C. was not the business owner and did not receive any of the fraud proceeds or attempt to launder them. Id. C.C. also voluntarily contacted the FBI and cooperated with the investigation. Id. Although Defendant points to some facts that are similar, those highlighted above show that C.C. was not similarly situated to Defendant.

The Eleventh Circuit has described the "similarly situated" component of the discriminatory effect prong as follows:

> "[A] 'similarly situated' person for selective prosecution purposes is one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant."

United States v. Brantley, 803 F.3d 1265, 1271-72 (11th Cir. 2015) (alteration adopted) (quoting Smith, 231 F.3d at 810).

Defendant, who is charged with participating in a conspiracy and scheme to submit fraudulent applications for PPP loans, is not similarly situated to C.C., the companies and individuals that were discussed in the DOJ press releases, or those who voluntarily returned their funds before any sort of Government

7

investigation. Rather, Defendant is alleged to have, among other things, fraudulently represented the number of employees and payroll amount at his company, attached a falsified payroll-tax form to his application, and wrote at least 25 checks to multiple individuals, falsely portraying these payments as payroll. Dkt. No. [125] at 5-11; Dkt. No. [141] at 2. Defendant's actions also arise from a conspiracy involving multiple other participants. See generally Dkt. No. [125]. This is materially different from the conduct of the companies and individuals that Defendant cites as comparable.

For these reasons, the Court finds that Defendant has not made a showing that he is similarly situated to any persons who have not been prosecuted for comparable conduct such that the Court might order an evidentiary hearing or the discovery sought from the Government, much less dismiss the charges asserted against him. See Jordan, 635 F.3d at 1189; Cannon, 987 F.3d at 937-38.

The Court also notes that even if it were to order the Government to produce the discovery Defendant seeks, the evidence still would be insufficient to show that he is entitled to dismissal of the charges, since the evidence Defendant seeks is limited to the race of those investigated but not prosecuted for PPP fraud. Dkt. No. [138] at 7. As explained above, to meet his burden, Defendant not only must provide evidence of the race of his comparators but also must show that they are similarly situated. Thus, even if the Court were to grant Defendant's request for discovery, he could not succeed on his motion to dismiss the indictment.

Furthermore, in addition to failing to show any evidence of "discriminatory effect" to merit discovery, Defendant has offered nothing to suggest that the Government has acted with discriminatory purpose in prosecuting him. To obtain discovery on a selective-prosecution claim, Defendant must provide some evidence tending to show both elements of the claim—discriminatory effect *and* discriminatory purpose. Cannon, 987 F.3d at 937 (quoting Jordan, 635 F.3d at 1188-89). "The discriminatory purpose prong requires that 'the decisionmaker selected or reaffirmed a particular course of action at least in part "because of," and not merely "in spite of," its adverse effects upon an identifiable group.' " Jordan, 635 F.3d at 1188 (quoting Wayte v. United States, 470 U.S. 598, 610 (1985)). There is no such evidence before the Court.[1] "Though this Court recognizes the difficulty of pleading sufficient facts without discovery, bare allegations are [simply] not sufficient to establish the need for discovery." United States v. Hill, Crim. Case No. 1:16-cr-051-TWT-JSA, 2016 WL 6246887, at *6 (N.D. Ga. Sept. 16, 2016), adopted at 2016 WL 6217122 (N.D. Ga. Oct. 25, 2016).

---

[1] Defendant cites United States v. Gordon, 817 F.2d 1538 (11th Cir. 1987), in support of his argument that discriminatory purpose has been shown. Dkt. No. [138] at 5-6 (citing Gordon, 817 F.2d at 1539-41). In Gordon, the defendant provided affidavits and other evidence in support of his claim, including a statement from the DOJ that the "investigations were part of a new policy brought on by the arrogance on the part of blacks in these counties." Id. at 1540 (internal quotation marks omitted). The Eleventh Circuit noted that even such a statement would not be enough on its own without the other evidence the defendant offered, which included evidence that a rival white political organization assisted law enforcement officials in prosecuting his case. Id. No similar evidence exists here.

9

Accordingly, Defendant's motion is also due to be denied for failure to satisfy the discriminatory purpose prong of the selective-prosecution analysis.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Indictment Due to Selective Prosecution, Dkt. No. [129], is **DENIED**.

**IT IS SO ORDERED** this  26th day of January, 2022.

_____
**Leigh Martin May**
**United States District Judge**