# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | :: | |
| | :: | CRIMINAL CASE NO. |
| v. | :: | 3:21-cr-00006-TCB-RGV |
| | :: | **UNDER SEAL** |
| NIKIA WAKEFIELD | :: | |
| INDIA MIDDLETON | :: | |

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendants Nikia Wakefield and India Middleton, jointly referred to as "defendants," filed a "Joint Preliminary Motion to Dismiss Indictment Due to Selective Prosecution," [Doc. 228 (emphasis and all caps omitted)], and subsequently filed a "Perfected Motion to Dismiss Indictment Due to Selective Prosecution," [Doc. 313 (emphasis and all caps omitted)],[1] as well as a "Supplemental Motion to Compel Discovery and/or Supplemental Objections to Order Denying Motion to Compel Discovery," [Doc. 294 (emphasis and all caps omitted)], seeking to obtain discovery in support of their motion to dismiss the indictment. The supplemental motion to compel discovery seeks reconsideration, [id. at 8], of an Order, [Doc. 278], denying defendants' prior motion to compel

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

discovery, [Doc. 249], which the Honorable Timothy C. Batten, Sr., Chief United States District Judge, adopted, [Doc. 307], overruling defendants' original objections, [Doc. 291], and following Judge Batten's ruling, defendants filed their perfected motion to dismiss the indictment, [Doc. 313]. For the reasons that follow, the supplemental motion to compel discovery, [Doc. 294], is **DENIED**, and it is **RECOMMENDED** that defendants' joint motion to dismiss the indictment due to selective prosecution, [Doc. 228], and perfected motion to dismiss the indictment, [Doc. 313], be **DENIED**.

Defendants are charged, along with eight other individuals, with wire fraud and conspiracy to commit wire fraud in connection with applications for funds made available through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, including Economic Injury Disaster Loan ("EIDL") grants and loans under the Payroll Protection Program ("PPP"). [Doc. 126].[2] On September 7, 2021, defendants filed a joint preliminary motion to dismiss the indictment due to selective prosecution, [Doc. 228], asserting that the charges against them should be dismissed because "the government has discriminated against them based on their race, gender, and class," since in other jurisdictions, "businesses who took [PPP] loans without qualifying were often allowed to return the funds without

---

[2] Defendant Wakefield also is charged with one count of bank fraud and one count of mail fraud. [Doc. 126 ¶¶ 47-48, 51-52].

2

criminal charges," and "the government has allowed wealthier, white men and/or corporations to resolve allegations of fraud via civil settlements without criminal prosecutions," [id. at 5 (footnotes omitted)]. Defendants subsequently filed "Defendants' Motion to Compel the Production of Evidence," [Doc. 249 (emphasis and all caps omitted)], seeking an order compelling the government to produce certain information that defendants asserted was necessary to perfect their motion to dismiss the indictment due to selective prosecution, [Doc. 228].

The undersigned entered an Order denying defendants' motion to compel, [Doc. 278], concluding that they failed to meet the burden established in United States v. Armstrong, 517 U.S. 456, 468-69 (1996), [id. at 5]. On December 16, 2021, defendants filed objections to the Order, denying their motion to compel, [Doc. 291], and on January 14, 2022, defendants filed their "Supplemental Motion to Compel Discovery and/or Supplemental Objections to Order Denying Motion to Compel Discovery," [Doc. 294 (emphasis and all caps omitted)]. Judge Batten overruled defendants' objections, [Doc. 307], but their supplemental motion to compel discovery, [Doc. 294], remains pending.[3]  Defendants have now filed their

---

[3] The Order, [Doc. 307], overruling defendants' original objections, [Doc. 291], did not explicitly address the additional objections in defendants' "Supplemental Motion to Compel Discovery and/or Supplemental Objections to Order Denying Motion to Compel Discovery," [Doc. 294 (emphasis and all caps omitted)], and

3

"Perfected Motion to Dismiss Indictment Due to Selective Prosecution," [Doc. 313 (emphasis and all caps omitted)], arguing that "[t]he government has discriminated against [them] . . . based on their race, gender, and class," [id. at 6], because they have identified "similarly situated individuals who have not been subject to prosecution," [id. at 11], including, in particular, an individual identified as C.C., whom defendants contend is "a white person who was part of an investigation in the Northern District of Georgia, but who has not been prosecuted," [id. at 5].

In their supplemental motion to compel discovery, defendants assert that, since they "have now identified a similarly situated white person who has not been prosecuted, they have met their burden to show that they are entitled to discovery, as established by the Supreme Court in *Armstrong*," and they ask the Court to "reconsider the order denying their motion to compel discovery[.]" [Doc. 294 at 8]. However, for the reasons that will be discussed with respect to their perfected motion to dismiss the indictment, the information provided regarding C.C. still does not satisfy the rigorous standard for obtaining the discovery sought by defendants, and the Court declines to reconsider its ruling on their motion to

---

since defendants' supplemental motion seeks reconsideration of the Order denying their prior motion to compel discovery, [id. at 8], it will be addressed in this Report and Recommendation as a motion for reconsideration of that ruling.

4

compel because, in addition to failing to show any evidence of "discriminatory effect" to merit discovery, defendants have offered nothing to suggest that the government has acted with discriminatory purpose in prosecuting them. See United States v. Cannon, 987 F.3d 924, 939 (11th Cir. 2021); United States v. Purdy, CIVIL ACTION NO. 2:16-CR-00005-RWS-JCF, 2016 WL 7007542, at *2–5 (N.D. Ga. Oct. 25, 2016), adopted by, 2016 WL 6956759, at *1 (N.D. Ga. Nov. 28, 2016). Accordingly, defendants' supplemental motion to compel discovery, [Doc. 294], is **DENIED**.

In their perfected motion to dismiss the indictment due to selective prosecution, [Doc. 313], defendants assert that the charges against them should be dismissed because "the government has discriminated against [them] . . . based on their race, gender, and class," since in other jurisdictions, "businesses who took [PPP] loans without qualifying were often allowed to return the funds without criminal charges," and "the government has allowed wealthier, white men and/or corporations to resolve allegations of fraud via civil settlements without criminal prosecutions," [id. at 6, 9 (footnote omitted)]. Defendants assert that in this district "there are 78 defendants being charged with CARES Act fraud, and upon information and belief, that at least 65 are Black, that 71 are people of color, and that 6 are white," and thus, "8.5% of defendants are white, 91% of defendants are people of color, and 83.3% are African American." [Id. at 5

(footnote omitted)]. Defendants contend that "[w]hen 71 out of 78 people prosecuted are people of color, the discriminatory impact is high enough to show discriminatory intent." [Id. at 14]. Defendants also argue that C.C., the white person investigated in connection with another case in this district, was similarly situated to them, and although the evidence of intentional fraud by C.C., an accountant, was much stronger than the evidence against them, C.C. was not prosecuted. [Id. at 7-8]. Thus, defendants contend that they have shown that similarly situated individuals were not prosecuted, [id. at 9-12], and that their prosecution was motivated by a discriminatory purpose and has had a discriminatory impact, [id. at 13-15].

"Prosecutors are given broad discretion in deciding against whom to focus limited prosecutorial resources, and a strong 'presumption of regularity supports . . . [those] decisions.'" United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000) (alterations in original) (quoting Armstrong, 517 U.S. at 464). "But they must exercise their charging discretion within constitutional constraints, including those 'imposed by the equal protection component of the Due Process Clause of the Fifth Amendment.'" Id. (quoting Armstrong, 517 U.S. at 464). "Under that clause, the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." Id. (citation and internal marks omitted).

6

In accordance with the judicial deference to prosecutorial discretion, selective prosecution claims are to be evaluated using "ordinary equal protection standards." Id. at 808 (citation and internal marks omitted). Therefore, defendants "bear a 'demanding' burden when seeking to establish that they are being selectively prosecuted in an unconstitutional manner." Id. at 807 (citation omitted). The Eleventh Circuit has interpreted Armstrong to require "clear and convincing" evidence that the "federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." Id. at 808 (citation and internal marks omitted). "The discriminatory effect prong of this test requires that 'similarly situated individuals were not prosecuted.'" United States v. Jordan, 635 F.3d 1181, 1188 (11th Cir. 2011) (quoting Smith, 231 F.3d at 809).

The Eleventh Circuit has described the "similarly situated" component of the discriminatory effect prong as follows:

> [A] 'similarly situated' person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

United States v. Brantley, 803 F.3d 1265, 1271-72 (11th Cir. 2015) (second alteration in original) (internal marks omitted) (quoting Smith, 231 F.3d at 810). Defendants argue that they "already identified similarly situated defendants who were

7

allowed to either return the funds in question or to enter into civil settlements without facing criminal charges," asserting that "the government gave large companies – who were called out by a public outcry over news of their CARES Act loans – a 'safe harbor' deadline within which to return the funds without penalty if they 'misinterpreted' the rules of the loan application," [Doc. 313 at 11 (citing [Docs. 249-5 & 249-6])], and that "the government has entered into settlements with other companies in lieu of prosecution," [id. (citing [Doc. 249-9])], but in this case, "the government has never offered to allow the defendants to simply repay the funds or to enter into a civil settlement," [id.]. Thus, defendants maintain that they have "met their burden to establish similarly situated individuals who have not been subject to prosecution." [Id.]. However, as the Court previously ruled in denying defendants' motion to compel discovery, [Doc. 278], defendants, who are charged with participating in a conspiracy and scheme to submit fraudulent applications for EIDL funds and PPP loans, are not similarly situated to companies that "misinterpreted" eligibility rules for obtaining CARES Act funds. Rather, defendants and their co-conspirators are alleged to have, among other things, submitted fraudulent applications when they did not even actually own businesses, see [Doc. 126 ¶¶ 18-30], which is materially different from the conduct of the companies that defendants cite as comparable. Thus, defendants have not made a sufficient showing that they are similarly

situated to the businesses and companies cited in their motion and supporting documents.[4]  See Cannon, 987 F.3d at 937-38; Jordan, 635 F.3d at 1189.

Defendants also argue that they are similarly situated to C.C., [Doc. 313 at 12], but the evidence submitted does not demonstrate that C.C. "committed the same basic crime in substantially the same manner" as defendants. Brantley, 803 F.3d at 1271 (citation and internal marks omitted).  Defendants assert that C.C. was an accountant with a criminal history who "prepared falsified forms to be submitted in support of [a] PPP application, and that she corresponded with the bank to get the funds from the loan released." [Doc. 313 at 5-6].  Although defendants argue that "the evidence of intentional fraud committed by accountant C.C. . . . is much stronger than that presented here," [id. at 7-8], the investigative reports submitted by defendants do not support this contention, see [Docs. 295-1 & 295-2].  Instead, those reports reflect that C.C. contacted law enforcement agents following the arrest of another individual for bank fraud in connection with

---

[4] Defendants' arguments about the percentage of African-Americans charged with fraud in connection with obtaining EIDL funds and PPP loans also is unavailing since "[s]tatistical data reflecting the treatment of only one particular group cannot satisfy the discriminatory effect prong because it fails to show that similarly situated persons were treated differently." Cannon, 987 F.3d at 937-38 (citations omitted) ("Under Armstrong and Jordan, this statistical evidence fails to establish discriminatory effect because it does not demonstrate that similarly situated defendants of other races could have been prosecuted for the same offenses but were not.").

obtaining a PPP loan, [Doc. 295-1 at 3-6], and reported that information had been provided to her in her capacity as an accountant to prepare documents that were submitted to obtain the PPP loan, see [id.]. Contrary to defendants' contention, these reports do not demonstrate "intentional fraud" on the part of C.C., but instead, indicate that C.C. was approached by a mutual friend to prepare financial documents for a third party who was seeking a PPP loan, [id. at 4], and since she had assisted other clients in obtaining PPP loans, she was familiar with the requirements for obtaining a PPP loan and the lawful use of PPP loan proceeds, and she communicated those to the individuals she assisted, [id. at 5-6]. The record reflects that C.C. cooperated with investigators by contacting them and being interviewed twice, [Docs. 295-1 & 295-2], and providing documents sought in connection with the investigation, [Doc. 295-1 at 5]. C.C. reported that she prepared certain financial documents using the business information provided to her by her friend and the third party, [id. at 4], but when asked to "adjust paperwork that should not be adjusted," she refused, [id. at 5], and she was not paid for her services, nor did she receive any proceeds of the PPP loan, [id. at 6]. After learning that the third party who obtained the loan had been arrested, C.C. contacted law enforcement authorities to report the conduct, [id. at 3, 6], and cooperated in the investigation, which is materially different from the conduct of defendants, who are charged with knowingly participating in a fraudulent

10

scheme and obtaining proceeds of the scheme, see United States v. Silien, 825 F.2d 320, 322 (11th Cir. 1987) (per curiam) (citation omitted) ("[A] defendant fails to satisfy the 'similarly situated' prong of the selective prosecution defense when those not prosecuted cooperated with the government, or were lower in the organizational structure of the conspiracy than those prosecuted, and when the defendant offers nothing but bare general allegations that the selectivity was motivated by racial considerations."); Purdy, 2016 WL 7007542, at *3 (defendant's "bare allegations" about the alleged culpability of individuals who cooperated with the government and were not prosecuted did not provide "clear evidence" that he was similarly situated to them); United States v. Peterson, Civ. No. 10-40031-01-KES, 2010 WL 3420015, at *2 (D. S.D. Aug. 27, 2010) (citations omitted) ("Defendants who fail to cooperate with the government are not similarly situated with defendants who do cooperate with the government."). Because the reports submitted simply do not demonstrate that C.C. was similarly situated to defendants to support their contention of selective prosecution based on the non-prosecution of C.C., defendants have failed to present "'some' evidence tending to establish selective prosecution, much less facts sufficient to create a reasonable doubt about the constitutionality of [their] prosecution." Jordan, 635 F.3d at 1189 (internal marks omitted).

In addition to failing to show any evidence of "discriminatory effect" to support their claim, defendants have offered nothing to suggest that the government has acted with discriminatory purpose in prosecuting them. See Cannon, 987 F.3d at 939. The government has explained that "[t]he offense conduct was revealed as a result of the execution of a search warrant at the home of [a] co-defendant . . . during an ongoing narcotics trafficking investigation," [Doc. 259 at 2 (citation omitted)], and a subsequent search of the co-defendant's cell phone "revealed hundreds of text messages and photos related to the EIDL and PPP scheme," [id. (citation omitted)], leading investigators to identify "fraudulent loans submitted on behalf of 48 different individuals," [id. (citation omitted)]. Defendants assert that "the mere fact that the evidence at issue was discovered during an additional investigation into one of the codefendants does not address the issue here" and "does not absolve the government of its obligation to ensure that its prosecutions comply with the due process clause." [Doc. 313 at 15]. However, prosecutors have "broad discretion" in enforcing criminal laws, and a "presumption of regularity" attaches to their prosecutorial decisions, Armstrong, 517 U.S. at 464 (citations and internal marks omitted), and "a defendant who seeks to establish a claim of selective prosecution in violation of the Constitution carries a 'demanding' burden," Cannon, 987 F.3d at 937 (citation omitted) (quoting Smith, 231 F.3d at 807). "[T]o dispel the presumption that a

12

prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary," Smith, 231 F.3d at 807 (emphasis and internal marks omitted) (quoting Armstrong, 517 U.S. at 465), and defendants have failed to meet that burden in this case.

For the foregoing reasons, defendants' supplemental motion to compel discovery, [Doc. 294], is **DENIED**, and it is **RECOMMENDED** that defendants' joint motion to dismiss the indictment, [Doc. 228], and perfected motion to dismiss the indictment, [Doc. 313], be **DENIED**.

There are no other pending motions before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial as to all defendants.

**IT IS SO ORDERED** and **RECOMMENDED**, this 19th day of May, 2022.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE