# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | :: | |
| | :: | CRIMINAL CASE NO. |
| v. | :: | 3:21-cr-00006-TCB-RGV |
| | :: | |
| NIKIA WAKEFIELD | :: | |
| INDIA MIDDLETON | :: | |

## ORDER

Defendants Nikia Wakefield and India Middleton, jointly referred to as "defendants," have filed "Defendants' Motion to Compel the Production of Evidence," [Doc. 249 (emphasis and all caps omitted)],[1] seeking an order compelling the government to produce certain information that defendants contend is necessary to perfect their "Joint Preliminary Motion to Dismiss Indictment Due to Selective Prosecution," [Doc. 228 (emphasis and all caps omitted)], and defendants also have filed a "Motion to Extend Time for Perfecting

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

Motion," [Doc. 262 (emphasis and all caps omitted)], seeking to have until 45 days after the Court rules on the motion to compel to perfect their selective prosecution motion. The government opposes the motion to compel, [Doc. 259], and defendants have filed a reply in support of their motion, [Doc. 267]. For the reasons that follow, "Defendants' Motion to Compel the Production of Evidence," [Doc. 249 (emphasis and all caps omitted)], is **DENIED**, and defendants' "Motion to Extend Time for Perfecting Motion," [Doc. 262 (emphasis and all caps omitted)], which the government has not opposed, is **GRANTED IN PART**.

Defendants are charged, along with eight other individuals, with wire fraud and conspiracy to commit wire fraud in connection with applications for funds made available through the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, including Economic Injury Disaster Loan ("EIDL") grants and loans under the Payroll Protection Program ("PPP"). [Doc. 126].[2] On September 7, 2021, defendants filed a joint preliminary motion to dismiss the indictment due to selective prosecution, [Doc. 228], asserting that the charges

---

[2] Defendant Wakefield also is charged with one count of bank fraud and one count of mail fraud. [Doc. 126 ¶¶ 47-48, 51-52].

2

against them should be dismissed because "the government has discriminated against them based on their race, gender, and class," since in other jurisdictions, "businesses who took [PPP] loans without qualifying were often allowed to return the funds without criminal charges," and "the government has allowed wealthier, white men and/or corporations to resolve allegations of fraud via civil settlements without criminal prosecutions," [id. at 5 (footnotes omitted)]. At the pretrial conference on September 9, 2021, the Court granted defendants' request for 60 days in which to perfect the motion. See [Doc. 243]. Counsel for defendants explained that they had served the government with discovery requests related to the motion to dismiss, which the government indicated it opposed. The Court granted defendants until September 23, 2021, to file any motion to compel discovery sought to support their joint motion to dismiss, see [id.], and defendants timely filed the pending motion to compel, [Doc. 249], which the government opposes, [Doc. 259].

Defendants move the Court to compel the government to produce the following information:

- A list of every defendant prosecuted for fraud related to the CARES Act Programs, including EIDL and PPP fraud, and that defendant's race and gender;

3

- A list of every individual and/ or entity investigated by the Northern District of Georgia for fraud related to the EIDL and/ or PPP programs, and the race and gender for those individuals (and in the case of an entity, the race and gender of the person responsible for that entity, such as the CEO or director);

- A list of individuals and/ or entities who entered into a civil judgment and/ or were allowed to repay the loans/ advances without facing criminal charges.

[Doc. 249 at 3]. Counsel for defendants requested this information from the government via letter on September 7, 2021. [Id. (citation omitted)]; see also [Doc. 249-3].

On September 16, 2021, the government responded via letter, stating in relevant part:

> As you know, your requests go[] far beyond the limits of Federal Rule of Criminal Procedure 16. Additionally, your requests do not meet the standard for discovery set forth in *United States v. Armstrong*, 517[] U.S. 456, 468-69 (1996); *United States v. Jordan*, Case No. 1:08-CR-369-JOF-RGV, 2009 WL 10670328, at *11 (N.D. Ga. Oct. 6, 2019), adopted by 2009 WL 10676404; and *United States v. Jordan*, 635 F.3d 1181, 1188 (11th Cir. 2011). Furthermore, some of your requests violate Federal Rule of Criminal Procedure 6 and the law enforcement investigatory privilege. Additionally, your first request is extremely burdensome and seeks publicly available information.

4

[Doc. 294-4]. Defendants now seek an order, compelling the government to provide the requested discovery. [Doc. 249]. The government opposes the motion to compel, arguing that the defendants have not met the burden established in United States v. Armstrong, 517 U.S. 456, 468-69 (1996). See [Doc. 259]. The Court agrees with the government.

In Armstrong, the Supreme Court considered "the showing necessary for a defendant to be entitled to discovery on a claim that the prosecuting attorney singled him out for prosecution on the basis of his race." 517 U.S. at 458. Because prosecutors have "broad discretion" in enforcing criminal laws and a "presumption of regularity" attaches to their prosecutorial decisions, id. at 464 (citations and internal marks omitted), "a defendant who seeks to establish a claim of selective prosecution in violation of the Constitution carries a 'demanding' burden," United States v. Cannon, 987 F.3d 924, 937 (11th Cir. 2021) (citation omitted) (quoting United States v. Smith, 231 F.3d 800, 807 (11th Cir. 2000)). "[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary," Smith, 231 F.3d at 807 (emphasis and internal marks omitted) (quoting Armstrong, 517 U.S. at 465), which requires a showing "that the federal

5

prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose," id. at 808 (quoting Armstrong, 517 U.S. at 465); see also United States v. Hill, CRIMINAL CASE NUMBER: 1:16-CR-051-TWT-JSA, 2016 WL 6246887, at *2 (N.D. Ga. Sept. 16, 2016) (citation omitted), adopted by 2016 WL 6217122, at *1 (N.D. Ga. Oct. 25, 2016).  The Supreme Court reasoned in Armstrong that obtaining discovery on a selective prosecution claim is subject to "a correspondingly rigorous standard," 517 U.S. at 468, and "requires a defendant to produce 'some evidence tending to show the existence of the essential elements' of a selective prosecution claim—discriminatory effect and discriminatory purpose," Cannon, 987 F.3d at 937 (citations omitted).

Defendants assert that "50 defendants [have been] charged in the Northern District of Georgia with submitting fraudulent applications for EIDL funds and PPP loans," [Doc. 249 at 1], and based on their preliminary investigation, "46 of those defendants [are believed to be] African-American, including all of the defendants in this case," [id. at 1-2].  Defendants argue that they have satisfied the Armstrong standard because they have "already identified similarly situated defendants who were allowed to either return the funds in question or to enter into civil settlements without facing criminal charges."  [Id. at 6].  Specifically,

defendants contend that in other jurisdictions, "the government gave large companies – who were called out by a public outcry over news of their CARES Act loans – a 'safe harbor' deadline within which to return the funds without penalty if they 'misinterpreted' the rules of the loan application," [id. at 6-7 (citations omitted)]; see also [Docs. 249-5 & 249-6], and "the government has entered into settlements with other companies in lieu of prosecution," [Doc. 249 at 7 (citing [Doc. 249-9])], but in this case, "the government has never offered to allow the defendants to simply repay the funds or to enter into a civil settlement," [Doc. 249 at 7]. Thus, defendants maintain that they have "met their burden to establish similarly situated individuals who have not been subject to prosecution." [Id.].

The Court disagrees and finds that defendants have failed to meet the rigorous standard for obtaining discovery in support of their selective prosecution claim. First, defendants' arguments about the number and percentage of African-Americans charged in the Northern District of Georgia with fraud in connection with obtaining EIDL funds and PPP loans is unavailing since "[s]tatistical data reflecting the treatment of only one particular group cannot satisfy the discriminatory effect prong because it fails to show that

similarly situated persons were treated differently." Cannon, 987 F.3d at 937-38. In United States v. Jordan, 635 F.3d 1181 (11th Cir. 2011), the Eleventh Circuit "affirmed the denial of discovery and an evidentiary hearing on a selective prosecution claim where the defendant's statistics showed that 'approximately 93%' of Armed Career Criminal Act ('ACCA') prosecutions in the Northern District of Georgia were against African Americans, but failed to 'include the criminal histories of the other defendants.'" Cannon, 987 F.3d at 938 (quoting Jordan, 635 F.3d at 1189). The Eleventh Circuit "explained that because the statistics did not touch on the criminal histories of other defendants who were not prosecuted, they were not probative of the 'similarly situated' inquiry of the discriminatory effect test." Id. (citation and internal marks omitted). Because "Jordan did not show that a single arrestee who was not prosecuted under the ACCA qualified for such prosecution, much less possessed a criminal history as substantial as his own," he failed to present "'some' evidence tending to establish selective prosecution, much less facts sufficient to create a reasonable doubt about the constitutionality of his prosecution." Jordan, 635 F.3d at 1189 (internal marks omitted). Accordingly, the Eleventh Circuit affirmed the district court's ruling that the defendant in Jordan was not entitled to discovery on his selective

prosecution claim. Id. As in Jordan, defendants here attempt to support their request for discovery by focusing on the number of African-Americans prosecuted in this district for fraud involving the CARES Act, but such "figures are not probative of the 'similarly situated' inquiry of the discriminatory effect test," and therefore, defendants have "not presented 'some' evidence tending to establish selective prosecution" as required to obtain discovery. Id. (citations and internal marks omitted); see also Cannon, 987 F.3d at 937-38 (citations omitted) ("Under Armstrong and Jordan, this statistical evidence fails to establish discriminatory effect because it does not demonstrate that similarly situated defendants of other races could have been prosecuted for the same offenses but were not.").

Defendants also attempt to support their selective prosecution argument by pointing to press reports indicating that in other jurisdictions, "the government gave large companies – who were called out by a public outcry over news of their CARES Act loans – a 'safe harbor' deadline within which to return the funds without penalty if they 'misinterpreted' the rules of the loan application," [Doc. 249 at 6-7]; see also [Docs. 249-5 & 249-6], and asserting that "the government has entered into settlements with other companies in lieu of

9

prosecution," [Doc. 249 at 7 (citing [Doc. 249-9])], while complaining that they were never offered such a safe harbor "rather than face criminal prosecution," [id. at 8]. However, defendants have not identified anyone who was "similarly situated" to them but not prosecuted. The Eleventh Circuit has described the "similarly situated" component of the discriminatory effect prong as follows:

> [A] 'similarly situated' person for selective prosecution purposes [is] one who engaged in the same type of conduct, which means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant.

United States v. Brantley, 803 F.3d 1265, 1271-72 (11th Cir. 2015) (second alteration in original) (quoting Smith, 231 F.3d at 810). Defendants, who are charged with participating in a conspiracy and scheme to submit fraudulent applications for EIDL funds and PPP loans, are not similarly situated to companies that "misinterpreted" eligibility rules for obtaining CARES Act funds. Rather, defendants and their co-conspirators are alleged to have, among other things, submitted fraudulent applications when they did not even actually own businesses, see [Doc. 126 ¶¶ 18-30], which is materially different from the

10

conduct of the companies that defendants cite as comparable. Thus, defendants have not made a sufficient showing that they are similarly situated to any persons who have not been prosecuted for comparable conduct to support obtaining the discovery sought from the government. See Jordan, 635 F.3d at 1189; Cannon, 987 F.3d at 937-38.

In addition to failing to show any evidence of "discriminatory effect" to merit discovery, defendants have offered nothing to suggest that the government has acted with discriminatory purpose in prosecuting them. Cannon, 987 F.3d at 939. The government has explained that "[t]he offense conduct was revealed as a result of the execution of a search warrant at the home of [a] co-defendant . . . during an ongoing narcotics trafficking investigation," [Doc. 259 at 2 (citation omitted)], and a subsequent search of the co-defendant's cell phone "revealed hundreds of text messages and photos related to the EIDL and PPP scheme," [id. (citation omitted)], leading investigators to identify "fraudulent loans submitted on behalf of 48 different individuals," [id. (citation omitted)]. Defendants have not addressed the origins of the investigation that led to the return of the indictment and superseding indictment or offered any evidence indicating that prosecutors have acted with a discriminatory purpose in this case. See Cannon,

11

987 F.3d at 939 (finding "no evidence of discriminatory purpose" where defendants came to the attention of law enforcement through the investigation of another drug dealer). To obtain discovery on a selective prosecution claim, defendants "must provide 'some evidence tending to show the existence of the essential elements of the [claim],'" Jordan, 635 F.3d at 1188 (citation omitted), but defendants have "not met the rigorous standard for discovery because [they have] not presented 'some evidence tending to show the existence of' both elements of [their] claim, i.e., discriminatory effect *and* discriminatory purpose," United States v. Purdy, CIVIL ACTION NO. 2:16-CR-00005-RWS-JCF, 2016 WL 7007542, at *2–5 (N.D. Ga. Oct. 25, 2016), adopted by, 2016 WL 6956759, at *1 (N.D. Ga. Nov. 28, 2016).[3] "Though this Court recognizes the difficulty of

---

[3] Defendants cite United States v. Gordon, 817 F.2d 1538, 1541 (11th Cir. 1987) (per curiam), vacated in part on reh'g, 836 F.2d 1312 (11th Cir. 1988) (per curiam), to support their motion, [Doc. 249 at 8], but unlike here, "the defendant in Gordon had presented the court with some evidence that persons of a different race had committed similar violations and not been prosecuted (which satisfied the discriminatory effect prong) as well as some evidence that established a colorable basis of invidiousness (which satisfied the intent prong)," United States v. Khan, CRIMINAL ACTION NO. 1:17-CR-40-SCJ-CMS, 2017 WL 9605112, at *3 (N.D. Ga. Sept. 5, 2017), adopted by 2018 WL 2213978, at *3 (N.D. Ga. May 15, 2018).

pleading sufficient facts without discovery, bare allegations are [simply] not sufficient to establish the need for discovery." Hill, 2016 WL 6246887, at *6 (footnote omitted).[4]

For the foregoing reasons, the "Defendants' Motion to Compel the Production of Evidence," [Doc. 249 (emphasis and all caps omitted)], is **DENIED**. Defendants' "Motion to Extend Time for Perfecting Motion," [Doc. 262 (emphasis and all caps omitted)], which the government has not opposed, is

---

[4] Consequently, the Court need not address in detail defendants' arguments regarding the particular discovery sought in this case, but notes that in Armstrong, the Supreme Court ruled that Federal Rule of Criminal Procedure 16 does not authorize defendants to examine government documents for "the preparation of selective-prosecution claims." 517 U.S. at 463. Moreover, defendants' first request seeks information that defendants apparently have already acquired and submitted in support of their motion, see [Doc. 268 (under seal)], the third request seeks publicly available information about civil judgments, and the remaining request is overly broad because it is not limited to information about similarly situated individuals and also seeks information that may be protected by grand jury secrecy or that could potentially compromise ongoing investigations. See United States v. Hsia, 24 F. Supp. 2d 33, 48–49, 52 (D.D.C. 1998) (citation omitted) (noting that "granting discovery with respect to a selective prosecution claim may require an examination of investigative files or secret grand jury materials, including information relating to ongoing investigations in other cases" in denying discovery where defendant failed to meet "the rigorous standard set forth in *Armstrong*"), rev'd on other grounds, 176 F.3d 517, 527 (D.C. Cir. 1999).

13

**GRANTED IN PART**, and if defendants elect to perfect their "Joint Preliminary Motion to Dismiss Indictment Due to Selective Prosecution," [Doc. 228 (emphasis and all caps omitted)], they shall file the perfected motion by **January 14, 2022**, and if not perfected by that date, the original motion will be deemed to have been abandoned.

    **IT IS SO ORDERED**, this 2nd day of December, 2021.

                                                                    _/s/ Russell G. Vineyard_
                                                                      RUSSELL G. VINEYARD
                                                                      UNITED STATES MAGISTRATE JUDGE