IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DENISE THOMAS,<br><br>    Defendant. | CRIMINAL ACTION NO.<br>1:22-CR-00025-JPB-RDC |

## FINAL REPORT AND RECOMMENDATON

Pending before this Court is Defendant Denise Thomas's Motion to Dismiss Indictment Due to Selective Prosecution, [Doc. 24]. She seeks dismissal of the Indictment or, in the alternative, discovery to establish the alleged discriminatory effect of the Government's decision to prosecute her and an evidentiary hearing to support her claim. The Government filed its initial brief opposing this motion on August 17, 2022, [Doc. 25]. Following a teleconference regarding Ms. Thomas's request for discovery, this Court directed the Government to respond to Ms. Thomas's discovery requests. [R. 27]. The Government filed a supplemental brief detailing its effort to comply with Ms. Thomas's request and renewing its objections on October 12, 2022. [Doc 29]. Ms. Thomas filed her reply brief on January 23,

2023, [Doc. 33], and the Government filed a sur-response on February 16, 2023. [Doc. 40]. The deadline set for Ms. Thomas's final response has expired.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Ms. Thomas is charged in a two-count Indictment with wire fraud offenses alleging the submission of fraudulent applications to obtain emergency financial assistance through the Coronavirus Aid, Relief, and Economic Security Act ("CARES") in violation of 18 U.S.C. §1343. [Doc. 1]. According to the Government, Ms. Thomas knowingly submitted fraudulent information to obtain a loan via the Paycheck Protection Program ("PPP"); funds Congress intended for qualifying small businesses who suffered financial losses as a result of the COVID-19 pandemic. [Doc. 25 at 3-4]. Ms. Thomas's scheme to defraud, it argues, included her submission of falsified payroll tax forms and other payroll-related documentation. [*Id*.]. These submissions resulted in the unlawful distribution of more than one million dollars. [*Id.* at 3].

Ms. Thomas, an African American woman with no history of prior fraud-related criminal activity, has moved to dismiss the Indictment because "the government has discriminated against her based on her race and class." [Doc. 24 at 4]. She submits that non-minorities in this District who engage in similar fraudulent conduct are provided the opportunity to repay their ill-gotten gains, rather than face

indictment or other criminal penalties. [Doc. 24 at 4-5]. She claims that the vast majority of those charged with committing CARES Act related fraud are racial minorities, despite the fact that only a small percentage of the loans were awarded to minorities and that most of the funds were awarded to Caucasian men and/or their companies. [*Id.* at 2]. She also argues that the Department of Justice permitted the latter to take advantage of a "safe harbor" program allowing them to avoid criminal penalties if they returned the funds; an option she was not extended. [*Id*. at 4, 6]. She bases this argument on "publicly available information" from various sources including the Center for Public integrity, The Washington Post, NBC News, ABC News, and Justice Department data related to its PPP investigations. [*Id*. at 4; 6-7]. Ms. Thomas specifically identified one of those who avoided prosecution in this District - "C.C." – who was allegedly involved in PPP-related fraud but was not prosecuted. [*Id.* at 2]. This failure to prosecute, coupled with the fact that nearly all of those facing prosecution in this District are racial minorities, supports her theory that her prosecution stems from a discriminatory purpose and has a discriminatory effect. [*Id*. at 9].

Because Ms. Thomas has the burden to produce clear evidence of discrimination to sustain her claim, she initially sought the following information from the Government:

> A list of every defendant prosecuted for fraud related to the CARES Act Programs, including EIDL and PPP fraud, and the defendant's race and gender;
>
> A list of every individual and/or entity investigated by the Northern District of Georgia for fraud related to the EIDL and/or PPP programs, and the race and gender for those individuals (and in the case of an entity, the race and gender of the person responsible for that entity, such as the CEO or director);
>
> A list of individuals and/or entities who entered into a civil judgment and/or were allowed to repay the loans/advances without facing criminal charges.

[Doc. 24 at 9-10].

The Government argues Ms. Thomas has not established that discovery is warranted in this case and that her motion should be denied. [Doc. 25]. First, it insists that it did not discriminate against her based on her race or socioeconomic class, and that she has failed to carry her heavy burden to prove that its prosecutorial policy had a discriminatory effect or was motivated by a discriminatory purpose. [*Id*. at 10-11]. Moreover, it submits that the evidence she relies upon to prove her claims of discriminatory purpose and effect, "general statistics" previously found to be unpersuasive in this District, is insufficient because she "has not identified any similarly situated individuals who were not prosecuted, let alone a pattern of such discrimination." [*Id*. at 10]. The Government also avers that the out-of-district cases she relies upon are also inappropriate comparisons because those investigations

4

involved claims pursuant to the False Claims Act; unlawful conduct that did not involve the submission of fraudulent applications to secure PPP loans. [Doc. 25 at 7]. Because the circumstances of those investigations are "materially different" from Ms. Thomas's, the Government alleges, she has failed to establish that her prosecution stems from a discriminatory purpose or that it's decision to seek an indictment establishes a discriminatory effect. [*Id.*].

Finally, the Government submits that Ms. Thomas's request for discovery should be denied because Rule 16 of the Federal Rules of Criminal Procedure does not require such disclosure, her request is unduly burdensome and she has failed to meet the "'vigorous standard for the elements of a selective prosecution claim [that] require[s] a correspondingly rigorous statement for discovery in aid of such a claim.'" [Doc 25 at 12]. As a result, it avers that it is not required to produce the evidence Ms. Thomas demands and an evidentiary hearing is unwarranted. [*Id.* at 14].

On August 23, 2022, this Court conducted a pretrial conference to address Ms. Thomas's requests and the Government's objections. [R. 27]. After consideration of the parties' arguments, this Court directed Defense Counsel to perfect its discovery requests and ordered the Government to respond. Instead of submitting amended discovery requests, Ms. Thomas informed the Government that

5

she was limiting her discovery requests "to just what has already been asked for in [her] motion. [Doc. 29 at 2]. Consequently, the Government responded to the original requests, advising Ms. Thomas that it "does not have a list of defendants prosecuted for fraud related to the CARES Act Program, including EIDL and PPP fraud, with the defendants' race and gender." [*Id*. at 3]. It also renewed its objection to Defendant's motion and her request for an evidentiary hearing. [*Id*. at 4].

Following an informal discussion between the parties regarding the Government's response, Ms. Thomas requested additional discovery including:

> A list of every individual and/or entity referred to the Northern District of Georgia for investigation for fraud related to the EIDL and/or PPP programs, and the race for those individuals (and in the case of an entity, the race of the person responsible for that entity, such as the CEO or director). The alleged dollar amount of the fraud and the criminal history of these individuals is also requested;
>
> A list of every individual and/or entity investigated by the Northern District of Georgia for fraud related to the EIDL and/or PPP programs, and the race for those individuals (and in the case of an entity, the race of the person responsible for that entity, such as the CEO or director). The alleged dollar amount of the fraud and the criminal history of these individuals is also requested;
>
> A list of every defendant prosecuted for fraud related to the CARES Act Programs, including for EIDL and PPP fraud, in the Northern District of Georgia, that defendant's race, and the case number. The alleged dollar amount of the fraud indicted and the criminal history of these individuals and/or entities is also requested.

> A copy of the policies, directives, statements, or any other guiding principles followed by the Northern District of Georgia in determining which particular persons will be prosecuted for fraud related to the CARES Act Programs, including for EIDL and PPP fraud.

[Doc. 33 at 3].

Ms. Thomas also provided data gathered by the Federal Defender Program regarding District-specific statistics for defendants charged with PPP/EIDL fraud offenses. [Doc. 33 at 4; Ex. A]. This data reveals that although only approximately 14% of loan applicants were African American, the vast majority of those prosecuted for these offenses are African American. [*Id*.]. Based on this data and this Court's previous order, Ms. Thomas asserts that the Government is required to produce the requested discovery even if a compilation of the information does not exist. [*Id.* at 4-5].

In its sur-response, the Government reiterated its objection to production of discovery, asserting that it does not have a comprehensive list of PPP investigations or cases identifying the race and gender of the suspects/defendants Ms. Thomas requests. [Doc. 40 at 2]. Even though some of this data may be maintained by various governmental agencies, it explained, to amass all of the requested material "would require the expenditure of significant time and resources as [it] would be compiling data from multiple incomplete sources." [*Id.* at 3]. Compelling it to

7

respond to these broad requests without Ms. Thomas "meeting the rigorous standards intentionally set forth by the Supreme Court," the Government continues, is unwarranted. [Doc. 40 at 3].

Following careful review of the parties' pleadings, counsels' oral arguments, and the applicable law, this motion is ripe for review. For the reasons stated below, the undersigned **RECOMMENDS** that Defendant's Motion to Dismiss be **DENIED.**

## II.  LEGAL STANDARDS

Pursuant to the Due Process Clause of the Fifth Amendment, "the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong, 517 U.S. 456* (1996) (quotations omitted); *United States v. Smith,* 231 F.3d  800 (11th Cir. 2000). The Eleventh Circuit has noted federal prosecutors have "broad discretion" in enforcing criminal law and a "presumption of regularity" attaches to those prosecutorial decisions. *Smith*, 231 F. 3d at 807.  Notwithstanding this discretion, prosecutors' decisions are subject to "constitutional constraints." *Id.* "One of these constraints, imposed by the equal protection component of the Due Process Clause of the Fifth Amendment, is that the decision whether to prosecute may not be based on an unjustifiable standard such as race, religion, or other arbitrary

classification." *Armstrong,* 517 U.S. at 464 *(*quoting *Oyler v. Boles,* 368 U.S. 448, 456 (1962)). Because of this presumption of regularity, a defendant seeking to establish a claim of selective prosecution in violation of the Constitution carries a "demanding" burden. *Smith*, 231 F.3d at 987 (quoting *Armstrong,* 517 U.S. at 463). "[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary." *Id.* (emphasis omitted) (quoting *Armstrong*, 517 U.S. at 465). Furthermore, discovery on a selective prosecution claim is subject to "a correspondingly rigorous standard." *Armstrong*, 517 U.S. at 468. It requires Ms. Thomas to produce "some evidence tending to show the existence of the essential elements" of a selective prosecution claim—discriminatory effect and discriminatory purpose. *United States v. Jordan*, 635 F.3d 1181 at 1188–89 (quoting *Armstrong*, 517 U.S. at 468). Thus, the defendant must show "that the federal prosecutorial policy had a discriminatory effect and that it was motivated by a discriminatory purpose." *Smith*, 231 F.3d at 808 (quoting *Armstrong*, 517 U.S. at 465); *United States v. Cannon*, 987 F.3d 924, 937 (11th Cir. 2021).

As for the discriminatory effect prong of this test, Ms. Thomas must establish that "similarly situated individuals were not prosecuted." *Smith,* 231 F.3d at 809. A "similarly situated" person is one "who engaged in the same type of conduct, which

9

means that the comparator committed the same basic crime in substantially the same manner as the defendant—so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan—and against whom the evidence was as strong or stronger than that against the defendant." *Smith,* 231 F. 3d at 810.

To establish discriminatory purpose, Ms. Thomas must show the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Jordan*, 635 F.3d at 1188 (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)). With these principles in mind, the undersigned turns to the claim presented.

### III.   DISCUSSION

Ms. Thomas argues that the Indictment is constitutionally infirm based on local and national statistics and the prosecutions that have been initiated in this District. [Doc 24 at 1-2]. She proffers statistics gathered by the Federal Defender Program regarding PPP/EIDL loan applicants who were prosecuted for fraud, explaining that "of the people in this district who, like Ms. Thomas, applied for loans totaling more than $150,000 and indicated their race, only approximately 14% of them are Black; but of those in this district who were prosecuted for PPP/EIDL fraud of more than $150,0000, however, approximately 86% are Black." [Doc. 33 at 4]. Although she

argues that these statistics are "striking and disturbing," she admits that only 30% of the loan applicants in this District reported their race. [*Id*.].

Ms. Thomas also claims that at least one Caucasian suspect in this District who was investigated as part of a CARES Act fraud conspiracy was not prosecuted. [Doc. 24 at 2].  She argues that this alleged disparate treatment, coupled with the statistics she proffers, requires the Government to provide the requested discovery because she has demonstrated that the Government's prosecutorial policy has a discriminatory effect and is motivated by a discriminatory purpose. [*Id.* at 4; 9].

The Government disagrees, arguing that Ms. Thomas has failed to establish that its prosecutorial policy has a discriminatory effect because she has not provided evidence of disparate treatment involving similarly situated individuals, relying on "news articles about businesses that voluntarily returned PPP funds for which they did not qualify and press releases about settlements in two out-of-district civil cases brought under the False Claims Act." [Doc. 25 at 7].  As for the statistics she proffers, the Government claims that the data is incomplete because it fails to identity the race and ethnicity of each individual and does not demonstrate a statistical discrepancy at either the national or District level. [*Id.* at 10].  Finally, the Government maintains that while some of the data Ms. Thomas requests may be in its possession, "collection would require the expenditure of significant time and

11

resources as [it] would be compiling data from incomplete sources;" an undue burden not required by Rule 16. [Doc. 40 at 3]. As a result, it avers that the motion should be denied.

The Government's arguments are persuasive. The statistical evidence Ms. Thomas presents fails to establish discriminatory effect because it does not demonstrate that similarly situated defendants of other races could have been prosecuted but were not. See, *Armstrong*, 517 U.S. at 470. Although the vast majority of defendants identified in Ms. Thomas's chart are African American, she concedes that a significant number of loan applicants did not reveal their race. This concession is problematic because "telling the court how many minorities <u>have</u> been prosecuted does nothing to prove how many non-minorities <u>have not</u> been." *Cannon*, 987 F.3d at 939 (11th Cir. 2021)(emphasis in original). In addition, some of the statistics she relies upon to prove the alleged discrimination are based on national surveys; calculations not tailored to the prosecutorial decisions employed in this District. Absent "a credible showing of different treatment of similarly situated persons," Ms. Thomas's proffered evidence is insufficient. See, *Armstrong*, 517 U.S. at 471.

Ms. Thomas has also failed to prove the Government's policy was motivated by a discriminatory purpose. As explained above, she must establish that the

Government "selected or reaffirmed a particular course of action at least in part 'because of' not merely 'in spite of,' its adverse effects upon an identifiable group." *Jordan*, 635 F.3d at 1188-89 (quoting *Wayte,* 470 U.S. 598 at 610). As emphasized by the Government, Ms. Thomas relies on general statistics to prove it had a discriminatory purpose in charging her with these offenses. However, there is no evidence to suggest that she was unlawfully targeted for prosecution, nor that prosecutors in this District utilized improper methods to secure the Indictment. As a result, Ms. Thomas is unable to establish that her Indictment is the product of discriminatory intent. See, *Cannon*, 987 F.3d at 939 (where court found defendants failed to prove they were unlawfully targeted for prosecution as the result of law enforcement officers' alleged discriminatory purpose). Because Ms. Thomas is unable to meet her burden of proof regarding either prong, her requests for discovery, an evidentiary hearing and dismissal of the Indictment should be **DENIED**. See, *Jordan*, 635 F.3d at 1189 (finding defendant not entitled to an evidentiary hearing or discovery because he failed to present evidence tending to establish he was subjected to selective prosecution).

## CONCLUSION

Based on the reasons stated above, the undersigned **RECOMMENDS** that the Motion to Dismiss Indictment due to Selective Prosecution, [Doc. 24], be

**DENIED.** Having not been advised of any impediments to the scheduling of a trial, this case is **CERTIFIED READY FOR TRIAL.**

IT IS SO RECOMMENDED on this 12th day of March, 2024.

_____
REGINA D. CANNON
United States Magistrate Judge